

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                    :
ALTESSE JEAN,                                                       :        09-CV-5394 (ARR)(RLM)
                                                                    :
                    Plaintiff,                                      :        NOT FOR ELECTRONIC
                                                                    :        OR PRINT PUBLICATION
     -against-                                                      :
                                                                    :        ORDER
AUTO AND TIRE SPOT CORP., et al.,                                   :
                                                                    :
                    Defendants.                                     :
------------------------------------------------------------------- X

ROSS, United States District Judge:

     The court has received the Report and Recommendation on the instant case dated March

7, 2013, from the Honorable Roanne L. Mann, United States Magistrate Judge.  No objections

have been filed.  Accordingly, the court has reviewed the Report and Recommendation for clear

error on the face of the record.  See Advisory Comm. Notes to Fed. R. Civ. P. 72(b); accord

Brissett v. Manhattan & Bronx Surface Transit Operating Auth., No. 09-CV-1930682 (CBA)

(LB), 2011 WL 1930682, at *1 (E.D.N.Y. May 19, 2011).  Having reviewed the record, I find no

clear error in Judge Mann's recommendation that plaintiff's motion to reopen the case for

purposes of adding new defendants be denied.  See Scela v. City Univ. of N.Y., 76 F.3d 37, 40

(2d Cir. 1996).  I also find no clear error in Judge Mann's recommendation that I enter a default

judgment against the defendants in the amount of $141,914.77, representing $126,820.00 in

unpaid principal, $14,812.50 in attorney's fees, and $282.25 in costs, as well as nine percent

annual statutory interest on the unpaid principal, calculated as of February 1, 2012.  I hereby

adopt the Report and Recommendation, in its entirety, as the opinion of the court pursuant to 28

1

U.S.C. § 636(b)(1). The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

s/ ARR

_____
Allyne R. Ross
United States District Judge

Dated:      May 24, 2013
            Brooklyn, New York

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ALTESSE JEAN,

                              Plaintiff,                    REPORT AND
                                                           RECOMMENDATION

              -against-                                    09-CV-5394 (ARR)

AUTO AND TIRE SPOT CORP., et al.,

                              Defendants.
------------------------------------------------------------------x

     In May 2011, plaintiff Altesse Jean ("plaintiff") settled this Fair Labor Standards Act

case against defendants Auto and Tire Spot Corp. ("Auto & Tire") and Richard Francois

("Francois") (collectively, "defendants"), and the case was subsequently closed.  More than a

year later, plaintiff filed a motion requesting that the case be reopened, so that (1) a default

judgment could be entered against defendants for breach of the settlement agreement; and (2)

plaintiff could amend his complaint to bring in two new defendants -- Tire Spot & Brakes, Inc.

("Tire Spot") and Emma Louis ("Louis") (collectively, the "proposed defendants") -- in order

to enforce the same settlement agreement against the proposed defendants.  See Plaintiff's

Memorandum of Law in Support of His Motion to Reopen Case (July 16, 2012) ("Pl. Mem."),

Electronic Case Filing ("ECF") Docket Entry ("DE") #57.  Thereafter, the Honorable Allyne

R. Ross referred plaintiff's motion to the undersigned magistrate judge for a report and

recommendation.  See Order of Referral (docketed July 24, 2012), DE #61.

     For the reasons set forth below, this Court recommends that the District Court (1) deny

plaintiff's motion to amend for lack of subject matter jurisdiction; and (2) enter default

judgments against defendants, jointly and severally, in the amount of $141,914.75,

representing $126,820.00 in unpaid principal, $14,812.50 in attorney's fees and $282.25 in

costs.

## BACKGROUND

On December 9, 2009, plaintiff filed this action, alleging that defendants failed to pay

him proper wages, in violation of the Fair Labor Standards Act ("FLSA") and New York

Labor Law. See Complaint (Dec. 9, 2009), DE #1. Although defendant Francois initially

appeared *pro se*, see Minute Order (May 28, 2010), DE #27, he later retained counsel to

represent him and Auto & Tire. See Notice of Appearance (Oct. 13, 2010), DE #41.

Thereafter, the parties engaged in discovery, participated in two mediation sessions and,

eventually, agreed in principle to settle the case. See Status Report (May 2, 2011), DE #48.

On May 16, 2011, in connection with the settlement, the parties wrote to Judge Ross,

requesting that she so-order their stipulation of dismissal, pursuant to which she would "retain

jurisdiction over the interpretation and enforcement of the settlement agreement." See Letter

(May 16, 2011) at 1, DE #51. In accordance with this request, the parties submitted a

proposed stipulation for Judge Ross's signature, see Proposed Order, DE #51-2, and a copy of

the executed settlement agreement (hereinafter, the "Settlement Agreement"). See Settlement

Agreement, DE #52. On July 26, 2011, Judge Ross signed the proposed stipulation and order,

which explicitly stated that the matter would be "dismissed with prejudice and without costs or

fees to any party as against any other party, except that the Court shall have continuing subject

matter jurisdiction to interpret and enforce the terms of the parties' Settlement Agreement and

-2-

Release entered into on May 16, 2011." See Stipulation and Order (July 26, 2011)

("Stipulation and Order"), DE #53.

     Pursuant to the Settlement Agreement, defendants were obligated to make monthly

installment payments, in varying amounts, beginning with the execution of the Settlement

Agreement and continuing through November 2014. See Settlement Agreement ¶ 1, Schedule

A. In the event defendants defaulted on any payments owed, plaintiff would provide

defendants with written notice of the default. See Settlement Agreement ¶ 1(e). If defendants

failed to cure the default within twenty business days of said notice, plaintiff was entitled to

apply for a default judgment "against any and all Defendants without further notice," in the

amount of $130,000 (minus any payments made), which represented the damages and costs

plaintiff believed he could have proven at trial. See id. In the event of a default, plaintiff

would also be entitled to recover "damages, including costs, expenses and reasonable

attorney['s] fees . . . as a consequence of the [b]reach." See id. ¶ 4(a). The two defendants

would be "jointly and severally liable . . . for any breach" of the Agreement. See id. ¶ 1(b).

     Upon execution of the Settlement Agreement, Francois made the first installment

payment from a bank account in the name of Tire Spot, rather than that of defendant Auto &

Tire. See Check (May 17, 2011), DE #59-10 at 1. Tire Spot was formed in May 2010 and

was allegedly run by Louis, Francois's girlfriend. See Declaration of Robert Wisniewski in

Support of Motion to Reopen ("Wisniewski Decl.") ¶ 19, DE #59; N.Y.S. Dep't of State

Entity Information (Tire Spot), DE #59-9. Subsequent payments for July 2011 and August

2011 were likewise made from Tire Spot's checking account. See Check (Aug. 1, 2011)

(replacing July 2011 check), DE #59-10 at 2; Check (Aug. 2, 2011), DE #59-10 at 3. Around the same time, plaintiff, who lives within walking distance of Auto & Tire's two locations, noticed that the signs for the locations had changed from "Auto & Tire Spot" to "Tire Spot 'n' Brakes." See Declaration of Altesse Jean ¶¶ 8-10, DE #58.

Following the August 2011 payment, defendants made no further payments under the Settlement Agreement. See Notice of Breach (Jan. 12, 2012) ("Notice"), DE #59-4; Wisniewski Decl. ¶ 23.[1] Accordingly, on January 12, 2012, plaintiff's counsel served defendants and their counsel with a formal Notice of Breach, pursuant to section 1(e) of the Settlement Agreement. See Notice. Despite this notice, defendants did not timely cure their breach. See Wisniewski Decl. ¶ 24.

On February 23, 2012, plaintiff wrote to Judge Ross, requesting permission to file a "motion to enforce the settlement agreement between the parties[.]" See First Motion for Premotion Conference, DE# 54. Nowhere in this letter-request did plaintiff indicate that he

---

[1] According to Schedule A of the Settlement Agreement, on August 1, 2011, defendants owed $1,060 — which was to be allocated into two $158.38 payments to plaintiff and one $734.24 payment to plaintiff's counsel. Defendants wrote a single check for $1,060 to plaintiff's counsel, who, in turn, argues that this payment was invalid under the Settlement Agreement because the $1,060 owed was made in one lump sum payment. According to plaintiff's counsel, the installment payments under the Settlement Agreement "were to be split between Plaintiff and his counsel and paid in three (3) checks, one made out to Plaintiff's counsel and the two other[s] made out to Plaintiff (one check as wages from which deductions were to be made and the other check as liquidated damages.)." Wisniewski Decl. ¶ 15. The Settlement Agreement, however, makes no reference to the number of checks, see generally Settlement Agreement, and plaintiff's counsel himself characterizes defendants' obligation as "forty-two (42) installment payments" – i.e., one payment for each of the 42 months under the schedule. Wisniewski Decl. ¶ 15. If the parties had intended that there be three different checks each month, then presumably the Settlement Agreement would have made that explicit. In any event, whether or not defendants' failure to write three separate checks for the August 2011 payment constituted a breach of the Settlement Agreement, defendants' failure to make any subsequent payment undoubtedly constitutes a breach.

-4-

also wished to amend the complaint to add new claims and bring in Tire Spot and Louis as additional parties. See generally id. Two weeks later, Judge Ross granted plaintiff permission to file his motion to enforce the Settlement Agreement. See Order (Mar. 6, 2012).

After a few months' delay due to staffing issues, see Wisniewski Decl. ¶¶ 5-11, plaintiff's counsel filed the pending motion. See generally Pl. Mem. In addition to seeking a default judgment against defendants, plaintiff, for the first time, requested leave to amend the complaint to add Louis and Tire Spot as defendants, so that he could also enforce the Settlement Agreement against them. See id. at 13. Plaintiff did not, however, submit his proposed new pleading for the Court's approval.

In essence, plaintiff contends that Francois created the new entity Tire Spot, with Louis as its officer, as a means of avoiding his and Auto & Tire's obligations under the Settlement Agreement, thus entitling plaintiff to an order piercing the corporate veil of Tire Spot. See id. Plaintiff further argues that Tire Spot is liable as a successor entity to Auto & Tire. See id. Finally, plaintiff posits that Tire Spot and Louis are "beneficiaries of an implied contract which has resulted in an unjust enrichment at the expense of Plaintiff." Id.

Although Francois and the proposed defendants filed letters to the Court requesting, and were granted, additional time to respond to plaintiff's motion in order to retain (new) counsel, neither Francois nor the proposed defendants filed any substantive response to the motion. See Order (Aug. 27, 2012), DE #65; Endorsed Order (Aug. 29, 2012), DE #66; Letter dated 8/24/2012 from Nicole Senat to Judge Mann (re Emma Louis), DE #67; see also Order (Feb. 28, 2013) (given defendants' and proposed defendants' six-month silence,

-5-

Court would presume that they did not retain counsel).

## DISCUSSION

### I. Subject Matter Jurisdiction

Before turning to the underlying merits of plaintiff's motion, the Court must first determine whether these motions were properly brought in federal court. See Ageitos v. N. Shore Country Club, No. 06 Civ. 2001(HBP), 2009 WL 2958390, at *4 n.2 (S.D.N.Y. Sept. 15, 2009) (court may *sua sponte* determine whether subject matter jurisdiction exists) (collecting cases).

As the Supreme Court has made clear, enforcement of a settlement agreement requires its own basis for federal jurisdiction; in the absence of such a basis, a federal court retains jurisdiction to enforce a settlement agreement only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement. See Kokkonen v. Guardian Life. Ins. Co. of Am., 511 U.S. 375, 378-81 (1994); accord Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996). Here, Judge Ross so-ordered a stipulation and order of dismissal that explicitly retained jurisdiction to enforce the terms of the Settlement Agreement between plaintiff and defendants, see Stipulation and Order at 1-2, and, thus, there is subject matter jurisdiction as to plaintiff's motion to enforce the Settlement Agreement against Francois and Auto & Tire.

Plaintiff's motion to amend the complaint for purposes of enforcing the Settlement

-6-

Agreement against the proposed defendants is a different matter.[2] Plaintiff does not

meaningfully address the legal basis for this Court's continuing subject matter jurisdiction over

state law claims against the proposed defendants, who were not parties to the Settlement

Agreement.[3] Plaintiff merely argues in a conclusory manner, without citing case law, that this

Court "has retained jurisdiction over this matter" and "justice requires that the new parties be

added to enforce the agreement with Plaintiff." See Pl. Mem. at 13.

While it is true that the District Court retained jurisdiction over the matter, it expressly

did so for a limited purpose — namely, to enforce the Settlement Agreement between

defendants and plaintiff. The limited nature of the Court's jurisdiction is clear from the face of

the Stipulation and Order, which was drafted by the parties. Moreover, where, as here, a

court has retained jurisdiction for one narrow purpose, it does not follow that the court has

continuing jurisdiction over the case as a whole. See Scelsa, 76 F.3d at 41 (court did not

retain jurisdiction "over the entire" settlement agreement, where dismissal order referenced

settlement agreement only with respect to costs); Duane Reade, Inc. v. St. Paul Fire & Marine

Ins. Co., 466 F.Supp.2d 560, 561 (S.D.N.Y. 2006) (although court retained limited

jurisdiction to hear post-judgment motions to compel appraisal, "at no point did the Court

---

[2] Notably, the filing of plaintiff's motion to amend the complaint and add new parties was not
approved by Judge Ross, inasmuch as plaintiff sought, and Judge Ross granted, authorization
only to file a motion to enforce the Settlement Agreement against defendants. See discussion
supra pp. 4-5.

[3] As previously noted, while plaintiff's counsel has not submitted a proposed amended
complaint, he indicates in his memorandum of law that plaintiff would seek to hold the
proposed defendants liable on the basis of state law claims, such as unjust enrichment, breach
of good faith and fair dealing, and violations of New York's debtor and creditor law. See Pl.
Mem. at 20-23.

retain continuing jurisdiction over the matter as a whole," and, thus, court denies plaintiff's

motion to reopen case to amend complaint to add new causes of action); cf. Murphy v. Bd. of

Educ. of the Rochester City Sch. Dist., 79 F.Supp.2d 239, 242 (W.D.N.Y. Dec. 16, 1999)

(dismissal order allowing plaintiff to reopen case did not entitle court to hear motion to enforce

settlement agreement, but only to reopen case).[4]

Finally, because the motion to amend in order to add the proposed defendants and new

state law claims falls outside the scope of the limited jurisdiction retained by Judge Ross in the

Stipulation and Order, plaintiff's motion to amend may be entertained only if there is an

independent basis for federal jurisdiction. See, e.g., Kokkonen, 511 U.S. at 382. Plaintiff

does not and cannot identify any independent jurisdictional basis, see generally Pl. Mem.,

inasmuch as plaintiff, defendants, and the proposed defendants all appear to be citizens of New

York, and plaintiff's motion does not articulate any claims under federal law. See, e.g.,

Zhang v. Choi, No. 09-CV-4615 (KAM) (RLM), 2010 WL 3004499, at *1 (E.D.N.Y. July 9,

2010), adopted, 2010 WL 3004408 (E.D.N.Y. July 29, 2010).

Therefore, this Court recommends that the District Court deny plaintiff's motion to

amend the complaint, for lack of subject matter jurisdiction. Contrary to plaintiff's contention,

see Pl. Mem. at 13, justice does *not* require that he be permitted to reopen this case to add new

parties and state law claims, since he may pursue his claims against the proposed defendants in

state court, where they belong. See Scelsa, 76 F.3d at 41 ("There is no injustice in applying

---

[4] Moreover, by seeking both to enforce the Settlement Agreement and to reopen the case,
plaintiff is requesting "mutually exclusive types of relief." Murphy, 79 F.Supp.2d at 241.
However, "plaintiff cannot have his proverbial cake and eat it too." Id.

-8-

Kokkonen in this case. Plaintiff has only chosen the wrong forum; there are remedies available in New York State courts."); Ageitos, 2009 WL 2958390, at *4 n.3 (in denying motion to reopen case to enforce parties' settlement, court noted that plaintiff was not "without any potential judicial remedy," as he could pursue contract claim in state court); cf. Supervalu Inc. v. Ectaco, Inc., No. 10-CV-5267 (RLM), 2011 WL 3625567, at *2 (E.D.N.Y. Aug. 12, 2011) (plaintiff suffered no hardship where he could file separate action on settlement agreement).

## II.     Motion to Enforce the Settlement

### A.     Liability Under the Agreement

As noted above, Judge Ross did retain jurisdiction to enforce the Settlement Agreement against the parties thereto. A settlement agreement is construed according to general principles of contract law. See Colburn Family Found. v. Chabad's Children of Chernobyl, 739 F.Supp.2d 614, 618 (S.D.N.Y. 2010). "Courts should not disturb a valid stipulation [of settlement] absent a showing of good cause such as fraud, collusion, mistake or duress, or unless the agreement is unconscionable or contrary to public policy, or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." Katel Ltd. Liab. Co. v. AT &T Corp., 607 F.3d 60, 65 (2d Cir. 2010) (quoting McCoy v. Feinman, 99 N.Y.2d 295, 302 (2002)).

The Court has reviewed the terms of the Settlement Agreement and concludes that it is a valid and binding contract between plaintiff and defendants, who were represented by counsel throughout its negotiation and execution. There is nothing in the record to suggest mistake,

-9-

duress or ambiguity, or any other basis for declining to enforce the Settlement Agreement. The Settlement Agreement unambiguously requires defendants to make monthly installment payments through January 2014, and it is undisputed that defendants failed to do so.

According to the Settlement Agreement, as a result of defendants' default, plaintiff is entitled to unpaid principal in the amount of $126,820.00, which represents $130,000 minus the $3,180 in payments defendants made through August 2011. Plaintiff has also requested, without any discussion, "statutory interest" on the amounts due under the Settlement Agreement. See Pl. Mem. at 23. The statute to which plaintiff presumably is referring is N.Y. C.P.L.R. § 5001(a). Although the issue is not free from doubt, there is authority (albeit not cited by plaintiff) for awarding prejudgment interest, at the rate of nine percent per annum, in connection with a motion to enforce a settlement agreement in the circumstances presented here. See Kasperek v. City Wire Works, Inc., No. 03 CV 3986 (RML), 2009 WL 691945, at *3 (E.D.N.Y. Mar. 12, 2009); but cf. Gesualdi v. Advanced Ready Mix Corp., No. 10-CV-3499 (SLT)(SMG), 2012 WL 4739269, at *5, *7 (E.D.N.Y. Sept. 28, 2012) (where stipulation of settlement in ERISA action provided that, in the event of a default, plaintiffs could recover, _inter alia_, "all current contributions due" and "all additional attorney's fees . . . . ," court "interprets this language as permitting recovery of all attorneys' fees -- but not costs," and as allowing recovery of current contributions but not interest and liquidated damages); Colburn Family Found., 739 F.Supp.2d at 623 (awarding interest on payments in default where Settlement Agreement provided for interest). Prejudgment interest should be "calculated from the earliest ascertainable date the cause of action existed." See N.Y. C.P.L.R. § 5001(b). But, where "such damages were incurred at various times, interest shall

-10-

be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Id. The Court recommends that interest be calculated from February 1, 2012 – the midpoint between defendants' first breach and the filing of plaintiff's motion to enforce.

### B.    Consequential Damages

Plaintiff also requests that he be awarded $28,745.00 in attorney's fees and $1,002.25 in costs, which were incurred as a consequence of the breach. Plaintiff has submitted his counsel's contemporaneous time records, in accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). See generally Time Records, DE #59-5.

In considering an application for attorney's fees and costs, the Court must determine the presumptively reasonable fee. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183–84 (2d Cir. 2008). Essentially, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (internal quotations omitted).

To ascertain the presumptively reasonable fee, or lodestar,[5] the Court must determine a reasonable hourly rate for the legal services performed, using factors such as the labor and

---

[5] See generally Purdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S.Ct. 1662, 1673 (2010); Shim v. Millennium Grp., 08-CV-4022, 2010 WL 2772493, at *2 n.3 (E.D.N.Y. June 21, 2010).

-11-

skill required, the difficulty of the questions, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney. See Arbor Hill, 522 F.3d at 186 n.3, 190. In assessing the hourly rate, courts typically consider rates awarded in the district in which the reviewing court sits, or what is known as the "forum rule." See Simmons, 575 F.3d at 174-75 (recounting history of forum rule). In order to overcome the forum rule's presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Id. at 175.

Once the Court determines the reasonable hourly rate, it must then multiply this rate by the reasonable number of hours expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. In any event, "[a] fee award should be based on a scrutiny of the unique circumstances of each case . . . ." McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citation and quotation omitted).

**1.   Reasonable Hourly Rate**

Here, attorney Wisniewski, who has more than 15 years' experience as a litigator, requests an hourly rate of $450. See Wisniewski Decl. ¶¶ 30-31. This is higher than the rates typically awarded in this District to experienced attorneys handling FLSA cases, which usually range from $300 to $400 per hour. See Rosas v. Subsational, No. CV 11-2811 (FB) (MDG), 2012 WL 4891595, at *10 (E.D.N.Y. Sept. 11, 2012) (recommending reducing hourly rate for FLSA attorney with 14 years' experience from $400 to $350), adopted, 2012 WL 4866678 (E.D.N.Y. Oct. 15, 2002); Jemine v. Dennis, No. 08-CV-3072 (RRM) (MDG), 2012 WL

-12-

4482769, at *23 (E.D.N.Y. Sept. 28, 2012) (adopting magistrate judge's recommendation that $400 hourly rate being sought in FLSA case by partner with 18 years' experience be reduced to $375 per hour); Santillan v. Henao, 822 F.Supp.2d 284, 300 (E.D.N.Y. 2011) (rejecting managing partner's requested $450 rate in FLSA case).

Recently, this Court recommended awarding Wisniewski $350 in a FLSA default action. See Banasiewicz v. Olympia Mech. Piping & Heating Corp., No. 10-CV-369 (SJ), 2012 WL 4472033, at *8 (E.D.N.Y. Aug. 31, 2012), adopted, 2012 WL 4473074 (Sept. 26, 2012). If the Court were considering the complexity of this case as a whole, which involved answering defendants and two mediation sessions, the Court might be inclined to award a higher rate than it did in Banasiewicz. Nevertheless, given that the attorney work involved here related solely to collection efforts and an unopposed motion for default judgment, the Court finds that $350 is an appropriate hourly rate. See Janus v. Regalis Constr., Inc., No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *12 (E.D.N.Y. July 23, 2012) (recommending $350 an hour for Wisniewski), adopted, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

Plaintiff's fee request also seeks an hourly rate of $225 for associates Michael Taubenfeld ("Taubenfeld") and Jonathan Parrott ("Parrott"), each with four years' experience, as well as for Karla Colón ("Colón"), an associate with two years' experience. See Wisniewski Decl. ¶ 32. Because Taubenfeld and Parrott are relatively inexperienced associates, this Court would reduce their hourly rates to $200. See Janus, 2012 WL 3878113, at *12 (recommending $200 per hour for Taubenfeld). As Colón was only admitted to the

-13-

New York bar in 2011, the Court recommends awarding her $175 per hour.

Finally, plaintiff's motion also requests that the Court award several unidentified paralegals and/or pre-admission attorneys an hourly rate of $125 for their work on this matter. When faced with fee requests for unidentified personnel, some courts have refused to award any such fees. See Drozd v. Vlaval Constr., Inc., No. 09 CV 5122 (SJ), 2011 WL 9192036, at *20 (E.D.N.Y. Oct. 18, 2011) (declining to award fees for individuals working for Wisniewski's firm, where application provided no names or information regarding their educational backgrounds or experience), adopted, 2012 4815639 (E.D.N.Y. 10, 2012). Here, the Court recommends reducing the hourly rate for these unidentified paralegals/attorneys to a more reasonable rate of $75 per hour. See, e.g., Empire State Carpenters Welfare v. Darken Architectural Wood, No. CV 11-46 (JS)(AKT), 2012 WL 194075, at *6 (E.D.N.Y Jan. 17, 2012) (requested $75 hourly rate for paralegal fell "squarely within the parameters found reasonable by other courts in this District"), adopted, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012).[6]

### 2.    Reasonable Amount of Hours

As an initial matter, plaintiff seeks reimbursement not only for hours expended in connection with collection efforts and the motion to enforce the Settlement Agreement, see, e.g., Time Records (Aug. 11, 2011) (discussion with defense counsel regarding settlement checks), DE #59-5 at 2, but also for work performed by counsel in preparing plaintiff's motion

---

[6] Plaintiff's counsel is on notice that all future applications for fees in other matters before the undersigned magistrate judge must include identification of all persons as to whom fees are sought, or else the Court will recommend that no fees be awarded with respect to such individuals.

to amend and add the proposed defendants.[7] See, e.g., Time Records (Apr. 30, 2012), DE #59-5 at 5. Given that Judge Ross did not authorize the filing of a motion to amend and that plaintiff made no attempt whatsoever to identify the basis for subject matter jurisdiction over the new claims and proposed defendants, the Court finds that a sizeable reduction in fees is warranted.[8]

Between April 17, 2012 and June 1, 2012, attorneys and paralegals working for the Wisniewski firm billed over 75 hours for work performed in connection with the pending motion to enforce the settlement and amend the complaint, see generally Time Records, and 3.8 hours drafting a proposed amended complaint. See Time Records (Apr. 24, 2012). The 3.8 hours spent drafting an amended pleading should be disallowed, as there is no jurisdiction over that pleading. Plaintiff's time records do not specify which of the 75 hours spent preparing plaintiff's motion papers involved work on the meritless motion to amend. However, approximately half of plaintiff's 23-page memorandum of law addresses the request to amend the complaint and more than half of the cited authorities relate to that issue. Therefore, this Court would reduce by fifty percent the time spent working on the motion. This results in a reduction of 4 hours for Wisniewski, a reduction of 31 hours for Colón, a

---

[7] Indeed, although no proposed amended complaint was filed with the Court, plaintiff seeks to recover for hours spent drafting an amended complaint. See, e.g., Time Records (Apr. 24, 2012) (drafted proposed amended complaint), DE #59-5 at 5.

[8] The Court does not opine as to whether plaintiff would be entitled to fees incurred in bringing a state court action against the proposed defendants.

-15-

reduction of 2.25 hours for Parrott, and a reduction of 1.4 hours for the unidentified "LA3."[9]

Multiplying the reduced rates by the reduced hours, the Court recommends awarding plaintiff $14,812.50 in attorney's fees.[10]

### 3.   Costs and Expenses

Finally, plaintiff requests that he be awarded $1,002.25 in costs as a consequence of defendants' breach. See Pl. Mem. at 12.  Although plaintiff characterizes the costs as "essentially the postage and preparation fees for the notice of breach served on Defendants' counsel[,]" see id., an examination of the individual disbursements belies this assertion.  While plaintiff seeks to recover nominal amounts for postage and Westlaw research, he also asks for $480.00 for mediation services billed on September 23, 2011, and $240 in interpreting services billed on November 1, 2011. See Costs, DE #59-5 at 8.  As there is no explanation for what these costs are or how they resulted from defendants' breach -- as opposed to representing costs incurred prior to the execution of the Settlement Agreement -- this Court would decline to award these sums.[11] See Drozd, 2011 WL 9192036, at *22 (recommending disallowance of

---

[9]  In addition, a few time entries are clearly unreasonable.  See, e.g.,Time Records (July 26, 2011) (billing 12 minutes for reviewing one-paragraph so-ordered Stipulation and Order).

[10]  This figure represents the following calculations: $6,510 for Wisniewski (18.6 hours at an hourly rate of $350); $760 for Taubenfeld (3.8 hours at an hourly rate of $200); $440 for Parrott (2.2 hours at an hourly rate of $200); $5,985 for Colón (34.2 hours at an hourly rate of $175); and $1,117.50 for three unidentified paralegals/preadmission attorneys (14.9 hours at an hourly rate of $75).

[11]  The Settlement Agreement provides that in the event of defendants' breach thereof, plaintiff is entitled to recover fees and costs incurred "as a consequence of the [b]reach."  Settlement Agreement ¶ 4(a).  In contrast, the Stipulation and Order dismissing the case specified that the
(continued...)

unexplained and apparently irrelevant costs incurred by Wisniewski's firm).  Thus, the Court

recommends that plaintiff be awarded $282.25 in costs.

## CONCLUSION

For the reasons explained above, this Court recommends that the District Court deny

plaintiff's motion to reopen the case for purposes of adding the proposed defendants, as the

Court lacks subject matter jurisdiction over those claims.  The Court further recommends that

a default judgment be entered against defendants in the amount of $141,914.75, representing

$126,820.00 in unpaid principal, $14,812.50 in attorney's fees and $282.25 in costs.  The

Court also recommends that plaintiff be awarded nine percent annual statutory interest on the

unpaid principal, calculated as of February 1, 2012.

Any objections to the recommendations contained in this Report and Recommendation

must be filed with the Honorable Allyne R. Ross on or before **March 25, 2013**.  Failure to file

objections in a timely manner may waive a right to appeal the District Court order.  See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Small v. Sec'y of Health & Human

Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Order into the Electronic Case Filing system and to

transmit copies via Federal Express to:

> Auto & Tire Spot Corp.
> 1357 Flatbush Avenue
> Brooklyn, NY 11210

---

[11](...continued)
matter was dismissed "without costs or fees to any party against any party . . . ."  Stipulation
and Order.  Therefore, fees and costs incurred prior to the dismissal are not recoverable.

Richard Francois, a/k/a Pierre
Richard Francois
c/o Auto & Tire Spot Corp.
1357 Flatbush Avenue
Brooklyn, NY 11210

Tire Spot & Brakes, Inc.
453 Coney Island Avenue
Brooklyn, NY 11218
Attn: Mr. Francois/Ms. Louis

Emma Louis
c/o Tire Spot & Brakes, Inc.
453 Coney Island Avenue
Brooklyn, NY 11218

Emma Louis
c/o Nicole Senat
480 East 23rd Street, Apt. #3A
Brooklyn, NY 11226

**SO ORDERED.**

**Dated:**     **Brooklyn, New York**
**March 7, 2013**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

-18-

**Service List:**

Auto and Tire Spot Corp.
c/o Pierre Richard Francois
453 Coney Island Avenue
Brooklyn, NY 11218

3